| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Parte Recurrida<br><br>v.<br><br>CHRISTIAN ORTIZ<br><br>Parte Peticionaria | TA2025CE00785 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.<br>E VI2024G0008<br>E OP2024G0007<br>E LA2024G0063<br>E LA2024G0064<br><br>Sobre:<br>Infr. Art. 93.A CP<br>Infr. Art. 249.B CP<br>Infr. Art. 6.05<br>Art. 6.14 Ley 168 |

Panel integrado por su presidenta la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

Rodríguez Flores, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 24 de noviembre de 2025.

El 19 de noviembre de 2025, el Sr. Christian Ortiz (peticionario) instó el presente recurso de *certiorari* acompañado de una *Moción en Auxilio de Jurisdicción y sobre Paralización de los Procedimientos*. En el recurso, solicita que revoquemos la *Resolución* emitida y notificada el 3 de noviembre de 2025, por el Tribunal de Primera Instancia (TPI), Sala Superior de Caguas. Mediante el referido dictamen, el TPI admitió las identificaciones 9 y 10 del Ministerio Público como exhibits de parte, al amparo de la Regla 901 (B) (1) y (13) de Evidencia, 32 LPRA Ap. VI, R. 901 (B) (1) y (13).

También, el peticionario solicitó el auxilio de este Foro para que ordenásemos la paralización de la continuación del juicio pautado para el 21 de noviembre de 2025, hasta tanto se resolviera este recurso de *certiorari*. Mediante *Resolución* emitida el 20 de

noviembre de 2025, declaramos *no ha lugar* a la *Moción en Auxilio de Jurisdicción y sobre Paralización de los Procedimientos.*

Examinado el recurso y los documentos adjuntados al mismo, y de conformidad con la discreción que nos confiere la Regla 7(B)(5) de nuestro Reglamento[1], este Tribunal deniega la expedición del auto de *certiorari* sin trámite ulterior.[2]

## I.

El 18 de agosto de 2025, comenzó el juicio en su fondo del presente caso por tribunal de derecho. El 20 de agosto de 2025, el Ministerio Público presentó el testimonio del Sargento Steven Lazú Vázquez, Placa Núm. 8-31655 (Sargento Lazú). Durante su examen directo, el Ministerio Público solicitó que se admitiera como exhibits los vídeos contenidos en las identificaciones 9 y 10 del Ministerio Público luego de haberle hecho ciertas preguntas relacionadas a su autenticación. La Defensa objetó el testimonio del Sargento Lazú en cuanto a su cualificación para declarar sobre el funcionamiento del sistema de grabación del equipo de cámaras de seguridad. Tras la argumentación de la Defensa, el 26 de agosto de 2025, el TPI dictó *Resolución* mediante la cual cualificó al Sargento Lazú como "perito en "extracción de vídeos" por poseer especial conocimiento, destreza, experiencia, adiestramiento o instrucción suficiente para ser de ayuda al juzgador de hecho".[3]

---

[1] Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025).

[2] Resulta pertinente señalar que el peticionario ya había recurrido ante nosotros en el caso **Pueblo v. Christian Ortiz, KLCE202401335**, donde el video que hoy se impugna su autenticación fue objeto de discusión. En esa primera ocasión el señor Christian Ortiz solicitó la supresión de la identificación en virtud de la Regla 234 de las de Procedimiento Criminal. En lo específico, la identificación que se deseaba suprimir era el producto de las imágenes captadas en video por las cámaras de seguridad de la estación de Gasolina Gulf donde ocurrió la muerte de Eric Omar Baerga Ramos en septiembre de 2022. Como parte de los procedimientos criminales, ese video fue presentado y admitido durante la Vista Preliminar como el *Exhibit* 1 del Ministerio Público, luego del testimonio del Sargento Lazú Vázquez sobre la obtención de este. Tras los correspondientes trámites, el TPI declaró no ha lugar a la solicitud de supresión. Inconforme Christian Ortiz, recurre ante nosotros vía *certiorari* -KLCE202401335, antes- el cual fue denegado el 18 de diciembre de 2024. Ante nuestra denegatoria recurrió vía *certiorari* ante el Tribunal Supremo donde igualmente fue denegada su expedición.

[3] *Resolución,* SUMAC-TA, Apéndice 6, pág. 8.

El examen directo del Sargento Lazú continuó los días 24 y 30 de octubre de 2025. Éste testificó sobre su recibo de la grabación y explicó los pasos seguidos para transferir los vídeos a los CD's que conforman las identificaciones 9 y 10 del Ministerio Público. La Defensa objetó la admisibilidad de los vídeos alegando que no habían sido correctamente autenticados porque no se presentó prueba sobre el conocimiento personal del funcionamiento, mantenimiento, operación e integridad del sistema de grabación de las cámaras de seguridad.

Trabada la controversia, el TPI emitió la resolución objeto del presente recurso. En la fundamentada resolución, luego de esbozar sus determinaciones de hecho, el foro primario realizó un análisis integral de la teoría del testigo silente y su interrelación con los métodos de autenticación de la Regla 901, aludiendo la jurisprudencia y doctrina concerniente a la evidencia demostrativa ilustrativa y la real. Al final, admitió las identificaciones 9 y 10 del Ministerio Público como exhibits de parte, al amparo de la Regla 901 (B) (1) y (13) de Evidencia, *supra*.

Inconforme, el peticionario acudió ante este Tribunal y adujo que:

> Erró el Tribunal de Primera Instancia, al admitir en evidencia una grabación extraída de un sistema de almacenamiento electrónico (récord electrónico) la cual constituye evidencia demostrativa real (sustantiva) en el presente caso, dado que el testimonio presentado por el Ministerio Público resulta insuficiente para su autenticación conforme a los requisitos bajo la Regla 901 de las Reglas de Evidencia, 32 LPRA Ap. VI, R. 901.

También, el peticionario incoó una *Moción en Solicitud de Prórroga para Presentar Transcripciones de Vistas,* peticionando la concesión de diez (10) días para presentar la transcripción del testimonio del Sargento Lazú, o en la alternativa, que este Tribunal requiriese al TPI proveer las grabaciones (audios) de las vistas

celebradas los días 20 de agosto, 24 de octubre y 30 de octubre de 2025, para su correspondiente evaluación.

## II.

## A.

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de superior jerarquía puede revisar, a su discreción, una decisión interlocutoria de un tribunal inferior.[4]

Para poder ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento[5], se justifica nuestra intervención. Estos criterios son:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro.[6] Por tanto, de no estar

---

[4] *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce De León v. AIG,* 205 DPR 163, 174 (2020).

[5] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025).

[6] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

presente ninguno de los criterios esbozados, procede abstenernos de expedir el auto solicitado para que continúen sin mayor dilación los procedimientos del caso ante el foro primario.

**B.**

Nuestro ordenamiento jurídico establece que, para que una evidencia sea considerada admisible, debe ser pertinente. Evidencia pertinente es aquella que tiende a aumentar o disminuir la probabilidad de la existencia de un hecho, que tiene consecuencias para la adjudicación de una acción. 32 LPRA Ap. VI, R. 401. La evidencia presentada, además de ser pertinente, debe ser autenticada. Así pues, para que una evidencia sea admitida, la parte proponente tiene la obligación de autenticarla.[7]

A tales efectos, la Regla 901, inciso (A), de las Reglas de Evidencia dispone que el cumplimiento del requisito de autenticación se logra con la presentación de evidencia que respalde la afirmación de la parte proponente de que la materia en cuestión es lo que afirma ser. 32 LPRA Ap. VI, R. 901. Autenticar una pieza de evidencia significa demostrar que la misma es lo que su proponente alega que es.[8]

Asimismo, la aludida Regla 901, *supra,* incluye una lista no exhaustiva de métodos para verificar la autenticidad de la evidencia. Por tanto, la autenticación no está restringida a un método específico.[9] Algunos de los ejemplos de autenticación provistos por esta regla son los siguientes:

> (1) *Testimonio por testigo con conocimiento.* – Testimonio de que una cosa es lo que se alega.
>
> […]
>
> (11) *Cadena de custodia.* – La evidencia demostrativa real puede ser autenticada mediante su cadena de custodia.

---

[7] *Pueblo v. Bianchi Álvarez,* 117 DPR 484 (1986).
[8] *Pueblo v. Echevarría Rodríguez I,* 128 DPR 299, 349 (1991).
[9] *Rosado Reyes v. Global Healthcare,* 205 DPR 796, 813 (2020).

[…]

(13) *Récord electrónico.* – Un récord electrónico podrá autenticarse mediante evidencia de la integridad del sistema en el cual o por el cual los datos fueron grabados o almacenados. La integridad del sistema se demuestra a través de evidencia que sustente la determinación que en todo momento pertinente el sistema de computadoras o dispositivo similar estaba operando correctamente o en caso contrario, el hecho de que su no operación correcta no afectó la integridad del récord electrónico.

Cuando se trata de evidencia electrónica, nos referimos a información que es creada, almacenada o compartida a través de un dispositivo o sistema electrónico.[10] Los métodos más frecuentes para autenticar este tipo de evidencia son: (1) autenticación mediante características distintivas y (2) autenticación mediante el testimonio de un testigo con conocimiento.[11]

Mostrar la autenticidad de la grabación por si sola, no es suficiente. El Ministerio Público debe presentar pruebas que confirmen que la grabación refleja con precisión la conversación o imagen grabada. De igual manera, debe establecer la competencia del operador, la fiabilidad del equipo de grabación, la falta de modificaciones y la identidad de las voces más importantes.[12]

La autenticación de un objeto mediante cadena de custodia conlleva acreditar la custodia o trayectoria del objeto desde su ocupación hasta su presentación en el juicio o vista.[13] El propósito de esta forma de autenticación es evitar error en la identificación del objeto y demostrar que la evidencia presentada no ha sufrido cambios sustanciales desde que fue ocupada.[14] En el contexto de las grabaciones, la cadena de custodia adquiere relevancia no tanto para determinar su pertinencia, sino más bien para establecer la confiabilidad de su estado o condición, especialmente cuando existe

---

[10] *Íd.,* pág. 811.
[11] *Íd.,* pág. 798.
[12] *Pueblo v. Santiago Feliciano*, 139 DPR 361, 422 (1995).
[13] *Pueblo v. Carrasquillo Morales*, 123 DPR 690, 698 (1989).
[14] *Íd.*

la posibilidad de alteraciones.[15]   La grabación será considerada admisible como evidencia si el proponente logra persuadir al tribunal de que no ha habido ninguna irregularidad que haya afectado la integridad de la custodia de la evidencia.[16]

Por último, la decisión sobre cuánto valor probatorio se debe otorgar a la evidencia admitida es una posterior y aparte que no debe confundirse con el análisis de autenticación.[17] Así pues, si el juzgador estima que se presentó prueba suficiente para autenticar el objeto y decide admitir la evidencia, tal determinación no deberá ser modificada en apelación a no ser por un claro abuso de discreción.[18]

**III.**

La contención del peticionario es que el testimonio del Sargento Lazú Vázquez resulta insuficiente para autenticar los vídeos contenidos en las identificaciones 9 y 10 del Ministerio Público conforme a los requisitos de la Regla 901 de las Reglas de Evidencia, *supra.*

En el presente caso, el Ministerio Público presentó prueba para establecer que el Sargento Lazú Vázquez recibió los vídeos con la autorización del dueño del negocio. Conforme a las determinaciones de hecho de la resolución recurrida, el Sargento Lazú Vázquez declaró sobre el recibo de los vídeos, su custodia y aseguró que éstos no fueron alterados.[19]

Conforme a la norma jurídica expuesta, una vez el proponente de la evidencia cumple con el requisito de demostrar que la evidencia no ha sufrido cambio durante su custodia, es al juzgador de los

---

[15] *Pueblo v. Santiago Feliciano,* supra*,* pág. 425; *Pueblo v. Carrasquillo Morales*, supra, pág. 701*.*
[16] *Pueblo v. Santiago Feliciano,* supra, pág. 426.
[17] *Rosado Reyes v. Global Healthcare,* supra, pág. 813.
[18] *Pueblo v. Echevarria Rodríguez I,* supra*,* pág. 350.
[19] El peticionario no cuestiona las determinaciones de hecho del foro recurrido, la pericia del testigo Lazú Vázquez, el contenido de los vídeos ni la cadena de custodia del objeto.

hechos a quien le compete considerarla y evaluarla, a la luz de las circunstancias del caso. Cualquier duda que surja sobre la posible adulteración o contaminación de la evidencia se dirige al peso que merece la prueba y no a su admisibilidad. *Pueblo v. Santiago Feliciano*, 139 DPR 360, 425 (1995); *Pueblo v. Carrasquillo Morales*, 123 DPR 690, 699 (1989).

Así pues, luego del análisis del recurso y del derecho aplicable, no vemos razón para intervenir con lo dispuesto por el TPI. Nada en el expediente sugiere que el foro recurrido hubiera incurrido en error o en abuso de la discreción que le asiste, de forma tal que se haga meritorio eludir la norma de abstención judicial que regula el ejercicio de nuestras funciones.

Por consiguiente, en virtud de lo dispuesto en la Regla 40 del Reglamento de este Tribunal de Apelaciones, *supra*, resolvemos denegar la expedición del auto de *certiorari*. A tenor con lo resuelto, declaramos *no ha lugar* a la *Moción en Solicitud de Prórroga para Presentar Transcripciones de Vistas.*

**IV.**

En mérito de lo antes expuesto, este Tribunal deniega la expedición del auto de *certiorari*.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Díaz Rivera disiente con opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Parte Recurrida<br><br>v.<br><br>CHRISTIAN ORTIZ<br><br>Parte Peticionaria | TA2025CE00785 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.<br>E VI2024G0008<br>E OP2024G0007<br>E LA2024G0063<br>E LA2024G0064<br><br>Sobre:<br>Infr. Art. 93.A CP<br>Infr. Art. 249.B CP<br>Infr. Art. 6.05<br>Art. 6.14 Ley 168 |

Panel integrado por su presidenta la Jueza Cintrón Cintrón, el Juez Rodríguez Flores y la Jueza Díaz Rivera.

**VOTO DISIDENTE DE LA JUEZA DÍAZ RIVERA**

En San Juan, Puerto Rico a 24 de noviembre de 2025

Disiento respetuosamente de la determinación a la cual arriba la mayoría en el presente caso, por entender que el Ministerio Público no cumplió con los requisitos establecidos en nuestro ordenamiento jurídico para autentica un video que alegadamente recoge ciertos hechos que dieron base a las acusaciones en el caso de autos. La controversia que nos vemos precisados a analizar es si el testimonio del Sargento Steven Lazú Vázquez fue suficiente para autenticar y admitir en evidencia dicho video.

En primer lugar, resaltamos que el video en cuestión NO es evidencia ilustrativa, sino que es lo que se conoce en la jurisprudencia como testigo silente "silent witness" o "case in chief". Ello es así, pues el Ministerio Público no ha presentado un testigo que haya visto con sus propios ojos en tiempo real, y no a través de unas cámaras, lo que recoge ese video. Por lo que no cabe aquí hablar de prueba ilustrativa. Esta distinción es medular debido a

que la prueba ilustrativa y la prueba "in chief" o testigo silente como en este caso, se autentican de manera distinta. Cuando un video se trae como evidencia ilustrativa, basta con que un testigo diga que refleja fiel y exacto lo mismo que vio en tiempo real con sus ojos. No obstante, ese no es el caso con este video por lo que esa no es la forma de autenticarlo. La forma de autenticar el "testigo silente" es mucho más rigurosa. Véase *Pueblo V. Nazario Hernández*, 138 DPR 760 (1995). Somos del criterio de que en este caso el Ministerio Público no cumplió con los requisitos necesarios para su admisibilidad.

Además, a nuestro juicio, ese no es el único escollo que enfrenta el Ministerio Público para autenticar el video en cuestión. Eso es así debido a que en adición a la autenticación de prueba in chief y/o testigo silente (prueba real), el Ministerio Público tiene que cumplir con los estándares de autenticación de evidencia electrónica digital. Esto es importante señalarlo, pues la evidencia electrónica tiene unos requisitos adicionales que deben cumplirse como parte de su autenticación para que sea admisible. Esos requisitos tampoco se cumplieron en este caso.

La Evidencia electrónica-digital es cualquier dato que se transmite o almacena usando una computadora. Véase *Vivan Neptune Rivera, "La Evidencia Electrónica: Autenticación y Admisibilidad", Ediciones Situm, 2017.* Por lo que lo determinante al momento de saber si una evidencia es digital o electrónica es el lugar en el que se genera o archiva las fotos o imágenes. Entonces ¿por qué es importante señalar que este video es evidencia electrónica? Porque como dice la profesora, Neptune Rivera: "La gran pregunta es si se autentica, admite y valora la evidencia electrónica de la misma manera que la evidencia documental o testimonial y la respuesta es no", *Neptune Rivera, supra, pág 8.*

Este tipo de evidencia no basta con ser pertinente para que sea admisible, sino que tiene que superar varios escollos probatorios como la autenticación. Véase *Neptune Rivera, supra, págs. 16-18.* Es indispensable que cuando los agentes del orden público intervengan en una escena en la que la evidencia del delito consta en un medio digital **(como en este caso)** se haga un reconocimiento e identificación de evidencia, se documente la escena, se haga una recolección y preservación de la evidencia. Es indispensable, además, que se cumplan con los siguientes pasos:

1) Preparar un inventario detallado del equipo, manuales, notas y todo documento relacionado a ocuparse;

2) Fotografiar la escena antes y después de ocuparse el equipo; y

3) Completar la documentación para la cadena de custodia (Nótese que la cadena de custodia es un requisito necesario, pero no suficiente en la autenticación de este tipo de evidencia.

4) Además, si lo que se incauta es lo que está dentro de los equipos (como el video de la cámara de seguridad) es importante preservar los archivos electrónicos y toda colección de información e identificarlo.

La importancia de lo anterior radica en que este tipo de evidencia es fácilmente manipulable y capaz de ser alterado, y es el Ministerio Público el que tiene el peso de la prueba de demostrar al Tribunal que eso no pasó. Para que el video que el Ministerio Público propone sea admisible, éste debe autenticarse conforme a la Regla 901(b)(12) y 901(b)13 de las de Evidencia.

Sobre el particular, la Regla 901(b)(12)y (13) de Evidencia disponen lo siguiente:

*"...(B) De conformidad con los requisitos del inciso (A) de esta Regla y sin que se interprete como una limitación, son ejemplos de autenticación o identificación los siguientes... (12) Proceso o sistema Evidencia que describa el proceso o sistema utilizado para obtener un resultado y que demuestre que el proceso o sistema produce resultados certeros.*

*(13) Récord electrónico Un récord electrónico podrá autenticarse mediante evidencia de la integridad del sistema en el cual o por el cual los datos fueron grabados o almacenados. La integridad del sistema se demuestra a través de evidencia que sustente la determinación que en todo momento pertinente el sistema de computadoras o dispositivo similar estaba operando correctamente o en caso contrario, el hecho de que su no operación correcta no afectó la integridad del récord electrónico..."*

Conforme a las citadas reglas para que el video en cuestión sea admisible se tiene que aportar evidencia del proceso o sistema utilizado para obtener un resultado y demostrar que se produjo un resultado certero. Es decir, en estos casos es necesario un testimonio base de una persona familiarizada con el sistema en el cual se crea, genera o guarda el video que describa el funcionamiento de ese sistema en los momentos que se generó el video. En ese sentido, el testimonio del Sargento Steven Lazú Vázquez no puede satisfacer esos requisitos, pues este ocupó el video posterior a la ocurrencia de los hechos, sin embargo, no está familiarizado con el funcionamiento de las cámaras de seguridad **previo** al momento de ocuparlo.

Por los fundamentos que anteceden, concluimos que el testimonio presentado por el Ministerio Público es insuficiente para sostener la admisibilidad del video en cuestión y en función de ello, expediríamos el recurso de certiorari y revocaríamos la *Resolución* recurrida.

Karilyn Díaz Rivera
Jueza de Apelaciones